# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　Plaintiff,<br>　v.<br>REYNALDO IXTA (2),<br><br>　　　　　　　　　　Defendant. | Case No. 08cr00988 BTM<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS INDICTMENT DUE TO POST-INDICTMENT DELAY** |

On November 21, 2011, Defendant Reynaldo Ixta (the "Defendant") filed a Motion to Dismiss Indictment due to Post-Indictment Delay (Dkt. No. 82), alleging that the 33-month delay between the filing of the Indictment in the above-captioned case (the "Indictment") and his arrest constituted a violation of his Sixth Amendment right to a speedy trial. For the reasons set forth herein, the Court DENIES the Defendant's motion to dismiss.

On May 17, 2007, the Defendant was arrested and charged with transportation and possession of a controlled substance in the Superior Court of California, County of San Diego. The state court case was dismissed at the Defendant's first appearance.

On April 2, 2008, the federal grand jury returned the Indictment, charging the Defendant and six other co-defendants on seven counts related to an alleged conspiracy to possess and distribute methamphetamine. The Defendant was named in counts one and seven of the Indictment. Count one alleges that the Defendant conspired to distribute methamphetamine in violation of 21 U.S.C. § 846, and specifically alleges that in furtherance

of the conspiracy, the Defendant committed the overt act of receiving 532 grams of methamphetamine on or about May 17, 2007. Count seven alleges that on or about May 17, 2007, the Defendant knowingly and intentionally possessed, with intent to distribute, 532 grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The Indictment was filed under seal.

The Defendant was arrested on the federal charges and taken into custody on January 21, 2011--33 months after he was indicted and 44 months after the date of his alleged criminal conduct. The Defendant claims that up until his arrest on January 21, 2011, he was completely unaware that the federal government had indicted him or had any plans to prosecute him for the same criminal conduct underlying his state court case in 2007. The parties agree that the Defendant lived openly in the United States for the entire period between the filing of the Indictment and his arrest.

The two suspected suppliers in the alleged conspiracy, Miguel Tejada and Bernardo Nava, both lived in Mexico in 2008. Tejada and Nava were charged together in a separate indictment (Case No. 08cr00990), but were identified by name in the Indictment in the present case. The government claims that it deliberately sealed the Indictment and postponed the arrests of Defendant Ixta and his six co-defendants (Case No. 08cr00988), as well as the arrests of two defendants charged in a sealed indictment in a related case (Case No. 08cr00989), all of whom the government believed to be U.S. residents when they were indicted, for fear that the arrests would have tipped off Tejada and Nava, causing them to flee. Nava was arrested in Tijuana, Mexico on July 9, 2010. Tejada was arrested in Tijuana, Mexico, on November 24, 2010.

Between January 5, 2011, and February 15, 2011, the Drug Enforcement Administration ("DEA") arrested both U.S. resident defendants charged in Case Number 08cr00989, as well as two of the U.S. resident defendants charged in the present case (Ixta and Roberta Nielsen). Of the remaining five defendants in the present case, three were already in custody, one, Lucio Guzman, is facing state charges, and one, Fredy Flores-Garcia, remains at large.

The Sixth Amendment provides that criminal defendants "shall enjoy the right to a speedy public trial . . . ." U.S. Const. amend. VI. To determine whether a defendant's Sixth Amendment speedy trial right has been violated, the Court balances the following four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." United States v. Mendoza, 530 F.3d 758, 762 (9th Cir. 2008) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). The first factor, the length of delay, operates as a preliminary inquiry: "If the length of delay is long enough to be considered presumptively prejudicial, an inquiry into the other three factors is triggered. . . ." Mendoza, 530 F.3d at 765. In extreme cases, the length of delay also bears on the fourth factor (prejudice to the defendant), since "the presumption that pretrial delay has prejudiced the accused intensifies over time." Doggett v. United States, 505 U.S. 647, 652 (1992) (quoting Barker, 407 U.S. at 530).

A.   Length of Delay

As a threshold issue, the government argued at the December 19, 2011 hearing that when an indictment is sealed, the Sixth Amendment right to a speedy trial does not attach until the unsealing of the indictment or the arrest of the defendant.

To support this position, the government cited Justice O'Connor's dissenting opinion in Doggett, which reasons that the prevention of prejudice to the defense is not a fundamental and independent objective of the Sixth Amendment speedy trial right. Rather, "[t]he touchstone of the speedy trial right . . . is the substantial deprivation of liberty that typically accompanies an 'accusation,' *not* the accusation itself. . . . [That] explains why the lower courts consistently have held that, with respect to sealed (and hence secret) indictments, the protections of the Speedy Trial Clause are triggered *not* when the indictment is *filed*, but when it is *unsealed*." Doggett, 505 U.S. at 663-64 (O'Connor, J., dissenting) (citations omitted) (emphasis in original); see also United States v. Watson, 599 F.2d 1149, 1156 n.5 (2d Cir. 1979) ("Because neither the indicted defendant nor the public has notice of the charges, [a sealed] indictment does not bring about 'the major evils protected against

by the speedy trial guarantee,' . . . namely, public obloquy and anxiety to the accused." (citations omitted)).

The majority opinion in Doggett, however, unseats this line of reasoning. Writing for the majority, Justice Souter stated that "the inability of a defendant adequately to prepare his case skews the fairness of the entire system[,]" and on that basis the majority held that the "most serious" form of prejudice caused to a criminal defendant by an unreasonable delay between formal accusation and trial is "'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." 505 U.S. at 654 (citing Barker, 407 U.S. at 532) (alterations in original). Unreasonable delay causes this form of prejudice, even if the defendant is not subject to pretrial incarceration and even if the indictment remains secret until the arrest of the defendant. See id. Because Doggett elevates prejudice to the accused's defense above the other forms of prejudice guarded against by the right to a speedy trial, lower courts can no longer ignore the delay occurring while a sealed indictment is pending on the grounds that such delay "does not bring about 'the major evils protected against by the speedy trial guarantee[.]'" See Watson, 599 F.2d at 1156 n.5.

Since the Supreme Court decided Doggett, the First and Fifth Circuits have concluded that the length of delay relevant to the speedy trial analysis begins upon the filing of a sealed indictment.[1] The Sixth, Seventh, Eighth, Ninth, Eleventh, and D.C. Circuits have each assumed, without deciding, that the speedy trial protection commences on the filing of a sealed indictment.[2] Moreover, the Ninth Circuit has stated in unqualified terms that the time

---

[1] See United States v. Casas, 356 F.3d 104, 112-113 (1st Cir. 2004) ("The government urges that we adopt a bright-line rule that the relevant time period for purposes of the right to a speedy trial begins to run only once the indictment is unsealed, which was about seven months before trial here. . . . We reject the government's position."); United States v. Bergfeld, 280 F.3d 486, 489 (5th Cir. 2002) ("The district court correctly recognized [in its Barker analysis] the length of delay between the time Bergfeld was indicted and the time the indictment was unsealed.").

[2] See United States v. Ellis, 622 F.3d 784, 790-91 (7th Cir. 2010) (including period during which indictment was under seal in speedy trial analysis); United States v. Erenas-Luna, 560 F.3d 772, 776-77 (8th Cir. 2009) (same); United States v. Jackson, 473 F.3d 660, 663-68 (6th Cir. 2007) (same); United States v. Tchibassa, 452 F.3d 918, 927 n.9 (D.C. Cir.

period relevant for the speedy trial analysis "is measured from 'the time of the indictment to the time of trial.'" Mendoza, 530 F.3d at 765. And while the Second Circuit has not expressly overruled United States v. Watson (cited both by the government at the December 19, 2011 hearing and by Justice O'Connor in her Doggett dissent), that case may no longer be authoritative. See United States v. Leaver, 358 F. Supp. 2d 255, 268 (S.D.N.Y. 2004) ("Watson is . . . incompatible with the subsequent practice of this Circuit, and with more recent Supreme Court authority. I therefore conclude that Watson is no longer controlling authority, and that the Sixth Amendment speedy trial guarantee attaches when an indictment is filed, regardless of whether it is sealed.").

Based on the forgoing, the Court concludes that the 33-month period beginning with the filing of the sealed Indictment on April 2, 2008, and ending with the Defendant's arrest on January 21, 2010, constitutes the length of the delay relevant to the Defendant's speedy trial claim.[3] The 33-month delay at issue is "presumptively prejudicial" and triggers a full inquiry into the other three Barker factors. See Mendoza, 530 F.3d at 762 ("If the length of delay is long enough to be considered presumptively prejudicial, an inquiry into the other three factors is triggered. . . . Generally, a delay of more than one year is presumptively prejudicial." (citations omitted)).

B.   Reason for the Delay

The second factor bearing on the Sixth Amendment speedy trial right is the reason for the delay. "[T]he prosecution bears the burden of explaining delay in bringing an accused to trial." McNeely v. Blanas, 336 F.3d 822, 827 (9th Cir. 2003).

---

2006); United States v. Hayes, 40 F.3d 362, 365 (11th Cir. 1994) (same); United States v. Shell, 961 F.2d 138, 143-44 (9th Cir. 1992) (same), *opinion withdrawn on rehearing on other grounds*, 974 F.2d 1035 (9th Cir. 1992).

[3] The Court notes that the fact that the Indictment was sealed remains relevant to the speedy trial analysis, insofar as it precludes the Defendant from establishing prejudice based either on "oppressive pretrial incarceration" or "anxiety and concern of the accused." See Doggett, 505 U.S. at 654 (commenting that prejudice to accused's defense is the only form of prejudice the defendant can establish as he was neither subject to pretrial detention nor aware of unresolved charges against him).

The government claims that it delayed the arrests of the Defendant and the other U.S. resident defendants because it sought to apprehend Tejada and Nava in Mexico before they could be alerted to the pending indictments and flee. The government also claims that during the pendency of the sealed indictments, it worked diligently to arrest Tejada and Nava, and that the delay in this case is attributable to inherent logistical hurdles in extradition cases and difficulty locating and apprehending Tejada and Nava within Mexico.

The Court finds the government's statements regarding its motive for the delay and its diligence apprehending Tejada and Nava to be true. The arrests of four out of the five at-large defendants in the present case and Case Number 08cr00989 occurred during a relatively short time span (January 5, 2011 through February 15, 2011) closely following the arrest of Tejada in Tijuana, Mexico, on November 24, 2011. That the government was prepared to arrest the at-large U.S. resident defendants in both cases as soon as both Tejada and Nava were in custody strongly supports its claim that the effort to apprehend Tejada and Nava was the real reason for the delay.

The Defendant argues that the government nevertheless is "to blame" for the delay, based on the mere fact that the government elected not to arrest the Defendant for a period of 33 months, even though he was living openly in the United States during that entire period. This argument clings too literally to the Supreme Court's articulation in <u>Doggett</u> of the delay factor as "whether the government or the criminal defendant *is more to blame* for that delay." <u>See</u> 505 U.S. at 651 (emphasis added). Here, the government is "to blame" in the sense that the government unilaterally decided to wait. But the "reason for delay" inquiry is not designed to determine, as a simple matter of cause and effect, which party most immediately caused the delay. As the Supreme Court explained in <u>Barker</u>:

> [D]ifferent weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531. The delay caused by the government's attempt to track down Tejada and Nava is more analogous to a delay caused by a search for a missing witness than to a delay caused by negligence or bad faith. Indeed, courts have recognized the legitimacy of the delay in the arrest of a defendant in order to locate and arrest other defendants. See <u>United States v. Wood</u>, 248 F.3d 1143, 2001 WL 185047, at *3 (5th Cir. Feb, 7, 2001) (weighing reason-for-delay factor against defendant where delay was caused by government efforts to locate co-defendants and there was "no indication that the government failed to search for Wood's co-defendants with diligence"); <u>United States v. Hayes</u>, 40 F.3d 362, 365 (11th Cir. 1994) (finding no speedy trial right violation, despite five-year delay between indictment and arrest, where government sealed indictment and delayed trial of defendant to facilitate apprehension of alleged co-conspirator in Zimbabwe); <u>United States v. Canez</u>, No. 07-20283, 2010 WL 3894103, at *6 (E.D. Mich. Sept. 24, 2010) (weighing reason-for-delay factor against defendant because the "delay between the sealed indictment and Canez's arrest was for a legitimate law enforcement purpose--to allow the officers an opportunity to identify Canez's supplier.").

Lastly, the Defendant argues that even if the government generally is permitted to delay the arrests of U.S. resident defendants while it pursues foreign suspects, it has not established that it worked diligently to pursue Tejada and Nava during the 33-month period in this case. In support of its exercise of reasonable diligence, the government sets forth the following timeline:

1. During 2008, the government requested the U.S. Department of Justice Office of International Affairs to seek provisional arrest warrants in Mexico for the arrest of Tejada and Nava.

2. On February 13, 2009, the United States submitted a request by diplomatic note to Mexico for the issuance of provisional arrest warrants for Tejada and Nava.

3. On July 9, 2010, Mexican authorities arrested Nava in Tijuana, Mexico. Nava waived extradition to the United States, arrived in the United States on December 10, 2010, and was arraigned on December 13, 2010.

4. On November 24, 2010, Tejada was arrested in Tijuana, Mexico. Tejada was ordered extradited, arrived in the United States on July 14, 2011, and was arraigned on July 18, 2011.

(See Dkt. No. 84, Government's Response to Defendant's Motion to Dismiss, at 4.)  At a hearing held on February 28, 2012, the government elected not to provide additional information regarding law enforcement activities during the roughly one-and-a-half-year period between the request for the issuance of the provisional arrest warrants and the arrests of Tejada and Nava, citing confidentiality concerns.  The Court finds that such additional information, however, is not necessary to establish that the government exercised reasonable diligence in its pursuit of Tejada and Nava.  Compare Mendoza, 530 F.3d at 763-64 (finding no reasonable diligence during eight-year delay, where defendant was in the Philippines and government did nothing other than enter defendant's arrest warrant into law enforcement database system), with United States v. Corona Verbera, 509 F.3d 1105, 1116 (9th Cir. 2007) (finding reasonable diligence in government's pursuit of defendant in Mexico based on fact that government sought formal extradition, without discussing details of law enforcement activity in Mexico).  As a result of the government's active efforts to locate and arrest Tejada and Nava in Mexico and bring them to justice in the United States, "the reason for delay weighs against dismissal."  See Corona Verbera, 509 F.3d at 1116.

C.     Defendant's Assertion of His Right

The Defendant contends that the delay between his arrest on January 21, 2011, and the assertion of his speedy trial right on November 21, 2011, is attributable to the time necessary for his counsel to prepare for trial.  During this period, the Defendant and the government jointly requested and received continuances of approximately 60 days on May 18, 2011, and July 22, 2011.  Where the defendant "assert[s] his speedy trial right only after requesting numerous continuances, . . . this factor weighs neither in favor of dismissal nor in favor of the government."  Corona-Verbera, 509 F.3d at 1116.

D.     Prejudice

The final factor relevant to the speedy trial inquiry is prejudice to the defendant.  A defendant claiming a violation of his right to a speedy trial can establish prejudice by showing

1 (a) "oppressive pretrial incarceration," (b) "anxiety and concern of the accused," or (c) "the possibility that the defense will be impaired." Barker, 407 U.S. at 542. As stated above, where, as here, the defendant was neither subjected to pretrial detention nor made aware of the unresolved charges against him during the period of delay, the defendant can establish prejudice only by showing impairment of his ability to mount a defense. (See note 3, supra (citing Doggett, 505 U.S. at 654).)

In Doggett, the Supreme Court held that "impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony can rarely be shown." Id. at 655. On that ground, the Doggett court held that where there is a "prolonged and unjustified delay in prosecution," the defendant is entitled to a presumption of prejudice and "affirmative proof of particularized prejudice is not essential." Id.

Ninth Circuit cases applying Doggett have required the defendant affirmatively to prove prejudice unless the government's bad faith or negligence caused the delay--at least where the delay is eight years or less. In United States v. Corona-Verbera, 509 F.3d 1105 (9th Cir. 2007), the Ninth Circuit reasoned that "[i]f the government pursued Corona-Verbera 'with reasonable diligence from his indictment to his arrest, his speedy trial claim would fail' unless [he could] should show 'specific prejudice to his defense.'" 509 F.3d at 1116 (citing Doggett, 505 U.S. at 656). The Corona-Verbera court upheld the district court's conclusion that the government acted diligently and therefore concluded--despite a nearly eight-year period of post-indictment delay--that, "Corona-Verbera is required to demonstrate specific prejudice; prejudice is not presumed." Id. (citing Doggett, 505 U.S. at 656). On the other hand, in Mendoza, another Sixth Amendment speedy trial case addressing an eight-year delay, the court concluded that because that the government was negligent in its pursuit of the defendant, the eight-year delay entitled the defendant to "a strong presumption that [he] suffered prejudice." 530 F.3d at 765. In both cases, the government's reason for delay determined whether the defendant was entitled to a presumption of prejudice.

As stated above, the government acted with reasonable diligence in its effort to bring

Tejada and Nava before a United States court, and the 33-month delay between the Defendant's indictment and his arrest served a legitimate law-enforcement purpose. Thus, the Defendant must meet the "heavy burden" of affirmatively proving actual prejudice to his defense in order to establish prejudice resulting from the delay. See United States v. Tanh Huu Lam, 251 F.3d 852, 860 (9th Cir. 2001). This he has failed to do.

In his moving papers, the Defendant asserted only that he "suffered actual prejudice . . . , as memories fade and evidence dissipates as time marches on." (Dkt. No. 82-1 at 7.) At the December 19, 2011 hearing, the Defendant's counsel was slightly more specific, claiming that (a) there was an additional person in the car that the Defendant was driving on May 17, 2007; (b) the presence of that additional person creates third-party culpability issues; and (c) the additional person is no longer available to testify. However, the Defendant has not offered any proof of the contents of the missing witness's testimony, and thus the Defendant has failed to show he was actually prejudiced by that potential witness's unavailability.[4]

The Court notes that even if the government's decision not to provide information regarding law enforcement activities in Mexico required a finding of government negligence, thereby entitling the Defendant to a presumption of prejudice, the Defendant still would be unable to establish prejudice in this case because the government affirmatively has established the absence of actual prejudice. See Doggett, 505 U.S. at 658 (holding that where government negligence resulting in delay entitles defendant to presumption of prejudice, "defendant is entitled to relief" *only if* presumption is not "persuasively rebutted").

---

[4] See United States v. Tanh Huu Lam, 251 F.3d 852, 860 (9th Cir. 2001) (holding that defendant failed to carry "heavy burden" to show actual prejudice where broad contentions "regarding defects in witness testimony or lost evidence" did not "credibly point to any specific damage to his defense stemming from the delay in his trial"); Rennie v. Martin, No. 2:09-cv-698, 2011 WL 4006575, at *16 (E.D. Cal. Sept. 8, 2011) (holding that habeas petitioner "cannot prove that he suffered actual prejudice as a result of [a potential witness's] death" during post-indictment delay, since petitioner did not allege specific contents of missing witness's testimony); cf. United States v. Mills, 280 F.3d 915, 920 (9th Cir. 2002) (holding that defendant's unsupported claim that deceased witnesses' testimony would have exonerated him falls short of "definite and non-speculative evidence" standard for establishing actual prejudice in Fifth Amendment pre-indictment delay case).

As the government explained both in its brief and at the February 28, 2012 hearing, the delay in this case has not affected the Defendant's ability to mount a defense. (See Dkt. No. 84 at 11-12.) All of the relevant events in this case, as pertaining to the Defendant, took place on a single day, during which the government recorded Defendant's incriminating statements over a wiretap. (Id. at 11.) The passage of time has no impact on the probative value of those recordings. The facts relating to the seizure of the 532 grams of methamphetamine are well-documented in police and DEA reports, and the government has stated that the DEA laboratory reports and the seized contraband remain available. (Id.) Finally, the Defendant made incriminating admissions after his arrest in 2011 that were documented in a DEA report. (Id.) Thus, the government has established how it plans to build its case around evidence that has not been affected by the passage of time, thus "prov[ing] that the delay left [the Defendant's] ability to defend himself unimpaired." Doggett, 505 U.S. at 658 n.4.

In short, Defendant cannot satisfy his burden to make an "affirmative showing that the delay weakened [his] ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence." Doggett, 505 U.S. at 655. And even if the defendant were entitled to a presumption of prejudice, the government has persuasively rebutted it. Consequently, the prejudice factor weighs against the Defendant.

E.   Balancing of Barker Factors

In this case, the government acted with reasonable diligence in its efforts to locate and apprehend Tejada and Nava in Mexico, and the 33-month delay served a legitimate law-enforcement purpose. Additionally, the Defendant failed to establish any prejudice resulting from the delay. The only factor weighing in favor of the Defendant is the fact of the 33-month delay in his arrest. Under these circumstances, the Court finds no violation of the Defendant's Sixth Amendment right to a speedy trial. See Corona-Verbera, 509 F.3d at 1116 (no speedy trial violation, despite eight-year delay, where government acted diligently and defendant failed to establish prejudice resulting from delay).

//

### III.  Conclusion

For the reasons stated above, the Court DENIES the Defendant's Motion to Dismiss Indictment for Post-Indictment Delay.

**IT IS SO ORDERED.**

DATED:  March 14, 2012

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court